IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

|  |  |  |
|---|---|---|
| CAITLIN O'BRIEN, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-1345-LRV |
| | ) | |
| WAL-MART STORES EAST, LP, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Wal-Mart Stores East, LP ("Wal-Mart" or "Defendant") Motion for Summary Judgment (Dkt. No. 17) (the "Motion for Summary Judgment"), the memoranda in support thereof, (Dkt. Nos. 18, 26) and in opposition thereto (Dkt. No. 23-1). On April 24, 2026, the Court heard oral argument on the Motion for Summary Judgment and took it under advisement. (*See* Dkt. No. 29 (Apr. 24, 2026 Hearing Minute Entry).) For the reasons that follow, Defendant's Motion for Summary Judgment is **DENIED**.

## I.   PROCEDURAL BACKGROUND

On July 16, 2025, Caitlin O'Brien ("Ms. O'Brien" or "Plaintiff") filed this action against Wal-Mart in Loudoun County Circuit Court asserting one claim for premises liability. (*See* Dkt. No. 1-1 at 1.) On or about August 12, 2025, Wal-Mart filed an Answer in state court. (*See* Dkt. No. 1 ¶ 2; Dkt. No. 1-2.) On August 14, 2025, Wal-Mart removed the matter to this Court on the basis of diversity jurisdiction. (*See* Dkt. No. 1 (Notice of Removal); Dkt. No. 2 (Local Civil Rule 7.1(B) Citizenship Disclosure Form).) On September 2, 2025, the parties consented to have the

1

undersigned magistrate judge "conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings." (Dkt. No. 6.) That same day, Judge Trenga referred this case to the undersigned for all purposes. (Dkt. No. 7.)

On September 10, 2026, the Court entered a Rule 16(b) Order setting forth certain scheduling deadlines, including that any motion for summary judgment be filed on or before January 12, 2026. (Dkt. No. 10 ¶ 14.) The Court then granted the parties' consent motion to extend the deadline to file any motion for summary judgment to February 27, 2026. (Dkt. No. 15.) At the Court's direction, the parties participated in a settlement conference on February 5, 2026, before Magistrate Judge Porter, but did not reach a settlement.[1] (*See* February 5, 2026 Minute Entry). On February 27, 2026, Wal-Mart filed its Motion for Summary Judgment (Dkt. No. 17) and the Court held a hearing on April 24, 2026 (Dkt. No. 28). The Motion for Summary Judgment is now ripe for review.

## II.    FACTUAL BACKGROUND

Pursuant to Federal Rule of Civil Procedure 56(a), the movant bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To that end, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Accordingly, the Court must review materials in the record to determine whether there is a genuine dispute as to any material fact. Before the Court

---

[1] Plaintiff was initially represented by Michael Daniel Reiter and later by Daniel Berke. (Dkt. Nos. 16, 24, 25.)

conducts that review, Wal-Mart asks that certain facts be admitted as undisputed because of Plaintiff's failure to comply with Local Civil Rule 56(B).

### A. Whether Plaintiff failed to comply with Local Civil Rule 56(B)

Local Civil Rule 56(B) requires the movant to "include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue" and the nonmovant to "include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated." E.D. Va. L. Civ. R. 56(B). Wal-Mart complied with this obligation and included a section in its brief captioned "Listing of Undisputed Material Facts." (*See* Dkt. No. 18 at 1.) Plaintiff's response brief lacks a "specifically captioned section" but nevertheless provides Plaintiff's view of the disputed facts. (*See* Dkt. No. 23-1 at 1–5.) Because Plaintiff's response brief does not strictly comply with Rule 56(B), Wal-Mart requests that the Court deem admitted the facts in Defendant's "Listing of Undisputed Material Facts" for purposes of the Motion for Summary Judgment. (Dkt. No. 26 at 2.)

Federal Rule of Civil Procedure 56(e)(2) and Local Civil Rule 56(B) permit the Court to "assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." E.D. Va. L. Civ. R. 56(B); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."). Alternatively, the Court may provide the nonmovant "an opportunity to properly support or address the fact," consider the supporting materials to determine whether a fact is truly disputed, or "issue any other appropriate order." Fed. R. Civ. P. 56(e)(1), (3) & (4).

Given that Plaintiff not only identified the facts she views as disputed but also attached a deposition transcript and policy document in support, the Court finds that Plaintiff partially complied with Local Civil Rule 56(B). Therefore, the Court will not deem admitted the facts in Wal-Mart's "Listing of Undisputed Material Facts." *See Cole v. Food Lion, L.L.C.*, 370 F. Supp. 2d 434, 436 (E.D. Va. 2005) (finding that "Plaintiff did not admit the material facts identified by the Defendant as undisputed" where "Plaintiff does have a fact section, but it is neither appropriately titled nor specifically numbered," which amounts to "Plaintiff's partial compliance with the requirements of Local Rule 56(B)").

## B. Undisputed Facts

The following facts are undisputed. On July 17, 2024, Ms. O'Brien was shopping at a Wal-Mart retail store in Sterling, Virginia. (Dkt. No. 18 at 1; Dkt. No. 23-1 at 1.) At approximately 7:49:20 a.m. on July 17, 2024, while walking in an aisle between the produce section and the women's wear section, Plaintiff passed a cardboard bin full of watermelons, slipped on a liquid substance, and fell to the ground. (Dkt. No. 18 at 1–2; Dkt. No. 23-1 at 1–2.) Upon falling, Plaintiff hit her left elbow, left wrist, and left hip. (Dkt. No. 18 at 1–2; Dkt. No. 23-1 at 1–2.)

Based on the surveillance footage provided by Wal-Mart,[2] the watermelon bin was sitting on a pallet and Plaintiff intended to walk around the pallet to inspect the women's wear. (*Id.* at 59:6–20.) Prior to her fall Plaintiff did not observe any substance on the floor, did not know how the substance came to be on the floor, and did not know how long the substance had been present. (*See* Dkt. No. 18-1 at 58:2–10, 59:21–60:11.) She recalled that the substance smelled like rotten watermelon juice. (*Id.* at 58:7–10.) The video footage does not show any employee or customer

---

[2] The footage produced by Defendant Wal-Mart is from a security camera located on the ceiling of the store at issue, approximately forty to fifty feet away from watermelon bin. (Dkt. No. 18-2.) The footage is from July 17, 2024, it begins at 06:44:59 a.m. and ends at 08:01:44 a.m., for a total runtime of 1:16:46. (*Id.*)

spilling anything near the watermelon bin or causing any damage to the watermelon bin. (Dkt. No. 18 at 1–2.) Nevertheless, some liquid emanated from the watermelon bin onto the floor. (*Id.*) Below is a screenshot from the security camera footage, depicting the watermelon bin's placement.



It appears that the liquid from the watermelon bin began to pool on the floor, in view of the camera, between approximately 7:41:00 and 7:42:00 a.m. (Dkt. No. 18 ¶ 5; Dkt. No. 23-1 at 3.) For approximately 15 seconds, beginning at 7:41:25 a.m., a Wal-Mart employee stood near the watermelon bin, appearing to look at her phone and her wrist. She then walked past the bin without looking at the floor. (*See* Dkt. No. 18-2 at 7:41:25 a.m. to 7:41:44 a.m.) As of approximately 7:44:00 a.m., there is a visible puddle in the area where Plaintiff subsequently fell. (*See id.* at 7:44:00 a.m.) Nearly a minute later, at approximately 7:44:52 a.m., a Wal-Mart employee walks past the watermelon bin. (*Id.* at 7:44:53 a.m.) Between 7:47:10 a.m. and 7:47:29

a.m., a customer reaches into the watermelon bin and then appears to step around or over the same area where Plaintiff later falls. (*Id.* at 7:47:10 a.m. to 7:47:29 a.m.) At approximately 7:48:31 a.m., another Wal-Mart employee walks past the watermelon bin while pushing what appears to be a metal cart with four shelves, stacked with blue bins. (*Id.* at 7:48:31 a.m.) None of the three employees who walked past the watermelon bin at 7:41:25 a.m., 7:44:52 a.m., and 7:48:31 a.m. addressed the liquid pooling on the ground. (*Id.*)

After Plaintiff falls at approximately 7:49:20 a.m., another customer helps her stand and collect her items. (*Id.* at 7:49:20 a.m.) Then, two Wal-Mart employees enter the surveillance camera frame, look at the floor, look at or into the watermelon bin, and one employee departs momentarily, returning with paper towels, which are then placed on the floor in the vicinity where Plaintiff fell. (*Id.* at 7:49:29 a.m. to 7:51:02 a.m.) After placing paper towels on the ground, a Wal-Mart employee leaves the frame, returns with a pallet jack, and a third employee uses the pallet jack to remove the entire pallet, including the watermelon bin, into an area out of view of the camera. (*Id.* at 7:51:02 a.m. to 7:52:44 a.m.) After the pallet is removed, a Wal-Mart employee places additional paper towels on the floor near where Plaintiff fell. (*Id.* at 7:52:44 a.m. to 7:53:22 a.m.) At approximately 7:53:52 a.m., Plaintiff can be seen walking in the aisle again and looks to be speaking on the phone. (*Id.* at 7:53:52 a.m.)

Two keys facts are in dispute: (i) whether the liquid began pooling at 7:41 a.m., before the first employee approached the watermelon bin and approximately eight minutes before Plaintiff fell; and (ii) whether the Wal-Mart employees who walked past the watermelon bin at before Plaintiff's fall were close enough to the puddle that they should have noticed it.

6

## III.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "genuine" dispute as to a material fact is present "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In reviewing a motion for summary judgment, courts must view the facts in the light most favorable to the party opposing the motion. *See Porter v. U.S. Alumoweld Co.*, 125 F.3d 243, 245 (4th Cir. 1997).

## IV.    DISCUSSION

For the reasons that follow, when viewing the facts in the light most favorable to Plaintiff, the Court finds that there remain genuine disputes of material fact that relate to whether Defendant had constructive notice of the substance on the floor, and those genuine disputes prevent the entry of summary judgment.

Defendant moves for summary judgment on the sole premises liability claim in this action. Under Virginia law,[3] to prevail on a slip-and-fall premises liability claim, Plaintiff must demonstrate that: (1) Wal-Mart owed Plaintiff an ordinary duty of care that (2) Wal-Mart breached, and the breach (3) proximately caused an (4) injury to Plaintiff. *See Brown v. Wal-Mart Stores E., LP*, 139 F.4th 356, 362 (4th Cir. 2025). A business has a duty to exercise ordinary care towards

---

[3] The parties agree that the applicable substantive law is Virginia law. *See Cerquera v. Supervalue, Inc.*, 715 F. Supp. 2d 682, 686 (E.D. Va. 2010) ("In an action in federal court where jurisdiction is based upon diversity of citizenship, the relevant state law controls.") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

its customers, who are invitees upon its premises, including an obligation to remove, within a reasonable time, foreign objects from its floors. *See id.* (citing *Colonial Stores, Inc. v. Pulley*, 125 S.E.2d 188, 190 (Va. 1962)). "[T]he duty to remove hazards only exists for those hazards the business 'knew' or 'should have known' about." *Id.* "Ordinarily, negligence is an issue 'to be decided by a fact finder' and should be decided as a matter of law '[o]nly when reasonable minds could not differ.'" *Wiley v. Wegmans Food Markets, Inc.*, No. 1:14-cv-235, 2014 WL 7359717, at *3 (E.D. Va. Dec. 24, 2014) (quoting *Kimberlin v. PM Transport, Inc.*, 563 S.E. 2d 655, 667 (2002) (citations omitted)).

An element in dispute is whether Wal-Mart had notice of the liquid on the floor in the area where Plaintiff fell. Defendant argues that "Plaintiff has put forth no evidence that anyone from Wal-Mart caused that condition or had actual knowledge of it prior to the accident." (Dkt. No. 18 at 5.) As for constructive notice, Defendant contends that "[t]he surveillance footage does not show any Wal-Mart employee in the direct vicinity of the clear liquid on the floor or otherwise observing or being alerted to the substance prior to the incident." (Dkt. No. 18 at 3.) Plaintiff counters that Wal-Mart caused the pooling by affirmatively placing the watermelon bin "in the middle of a highly-trafficked center aisle" and in any case, Wal-Mart had notice because three Wal-Mart employees were in the direct vicinity of the watermelon bin in the minutes prior to Plaintiff's fall, such that those employees either knew or should have known there was liquid pooling on the ground that could harm invitees. (Dkt. No. 23-1 at 10–12.)

## A. Whether to impute notice based on the "method theory"

Plaintiff argues that the Court should impute notice on Defendant because "Defendant created the hazardous conditions by affirmatively placing the pallet and bin of spoilable produce [i.e., watermelons] in the middle of a central aisle of the store, and because Defendant does not

8

appear to have regularly monitored the produce after placing it in the middle of the central aisle."
(*Id.* at 12.) However, this Court and the Supreme Court of Virginia have consistently and "squarely rejected the so-called 'method theory,' under which proof of actual or constructive notice of a specific dangerous condition can be omitted 'if it is reasonably foreseeable that a dangerous condition is created by, or may arise from, the means used to exhibit commodities for sale.'" *Hairston v. Wal-Mart Stores E., LP*, No. 2:18-cv-619, 2022 WL 421193, at *8 (E.D. Va. Jan. 20, 2022) (cleaned up) (quoting *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 453–54 (4th Cir. 2004)), *aff'd sub nom. Hairston v. Wal-Mart Stores E., L.P.*, No. 22-1132, 2023 WL 4787465 (4th Cir. July 27, 2023). Accordingly, Wal-Mart's choice to place the watermelon bin in a "high traffic area" is insufficient to impute notice of the hazard on Wal-Mart. Instead, Plaintiff must demonstrate that Defendant had actual or constructive notice of the liquid leaking from the bin and pooling on the ground.

### B. Whether Defendant had actual notice of the hazardous condition

Plaintiff alternatively contends that Wal-Mart had actual notice of the liquid pooling on the ground because one of Defendant's employees stood near the watermelon bin for several seconds after the liquid was allegedly visible. (Dkt. No. 23-1 at 12.) Defendant counters that "the fact that an employee briefly stood near the watermelon bin at approximately 7:41 a.m. does not demonstrate that the employee observed the alleged spill or otherwise had knowledge of it, especially since the video clearly shows that the liquid was not noticeable at this time." (Dkt. No. 26 at 4–5.)

"Whether a business actually knew—had actual notice—of a hazard is a straightforward question to ask." *Brown*, 139 F.4th at 362. However, on this record, this is no straightforward answer. Although Plaintiff argues that Wal-Mart had actual notice of the hazardous condition,

there is no testimony or sworn declaration wherein an employee concedes that they knew about the liquid pooling on the ground or other evidence to that effect. *See Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 763 (4th Cir. 2021) (explaining that Plaintiff failed to establish "actual notice" of the specific hazard where Plaintiff relied on an employee's testimony that he knew about a more general hazard, but there was no testimony that an employee knew about the specific hazard at issue). During the April 24, 2026 hearing, when the Court asked what evidence supported the theory that Wal-Mart had actual notice of the liquid on the floor, Plaintiff's counsel conceded that there is no direct evidence of actual notice. (*See* Dkt. No. 29 (Apr. 24, 2026 Hearing Minute Entry).)

## C. Whether Defendant had constructive notice of the hazardous condition

As counsel for the parties acknowledged during the April 24, 2026 hearing, whether summary judgment is appropriate hinges on the issue of constructive notice. (*See* Dkt. No. 29 (Apr. 24, 2026 Hearing Minute Entry).) As compared to actual notice, "[w]hether a business *should have* known about a hazard—had constructive notice—is a more complex question." *Brown*, 139 F.4th at 362 (emphasis in original). That complexity stems from the highly fact-specific nature of determining whether a business exercising reasonable care would have discovered the hazard at issue. (*Id.*)

Under Virginia law, there are at least two avenues to establish constructive notice. First, Plaintiff may proffer "evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 890 (1993). Put differently, the hazard existed for so long that a reasonable business would have discovered it. When pursuing this avenue, the focus is on the length of time that the hazard existed, but slight factual differences may result in different outcomes. For

10

example, in *Smith v. Sam's East, Inc.*, a customer slipped on a puddle of soda "within minutes of when the soda bottle was punctured" and the court found that "the liquid simply had not been on the floor long enough" to establish constructive notice. 2016 WL 3189293, at *2 (W.D. Va. June 7, 2016). Conversely, in *Messina v. Sam's East, Inc.*, the court denied defendant's motion for summary judgment because the fact that the puddle was visible for at least eight and a half minutes and employees were present in that area "who were tasked with cleaning the area, create[ed] a jury issue on whether [the business] should have been on notice about the existence of a hazardous condition." 4:17-cv-075, 2018 WL 3478926, *3 (W.D. Va. July 19, 2018).

There is no dispute that Plaintiff fell at approximately 7:49:20 a.m. (*See* Dkt. No. 18-1.) There is, however, a genuine dispute of fact regarding how long the liquid was on the floor before Plaintiff's fall, with Plaintiff arguing it began pooling at 7:41:00 a.m. and Wal-Mart arguing it was 7:42:00 a.m. Defendant argues that these facts are not truly in dispute because there is objective video evidence that "plainly depicts the events at issue." (Dkt. No. 26 at 2 n. 1.) Upon the Court's review of the footage, the factual disputes are not plainly resolved because the video is "difficult to interpret" because the location of the surveillance camera does not give a detailed view of the clear liquid at issue on the floor, making it challenging to discern when the substance began pooling or became noticeable. *Brown*, 139 F.4th at 366 (finding the video footage did not resolve the genuine disputes of material facts). As Defendant notes "[i]t is difficult to discern exactly when the clear liquid began to seep from the watermelon bin." (Dkt. No. 18 at 2.)

Accordingly, a reasonable fact finder could review the evidence in the record and conclude that Wal-Mart's employee who was near the watermelon bin at approximately 7:41:25 a.m. should have seen the liquid on the floor. That factfinder may also determine that the liquid was present for an unreasonable amount of time before Plaintiff's fall and that a business exercising reasonable

11

care would have discovered the liquid more quickly. Therefore, there are factual issues that preclude the entry of summary judgment.

Additionally, as a second avenue to establish constructive notice, Plaintiff may seek to proffer evidence that irrespective of how long the hazard existed, an employee was near the hazard, "working at the site of the hazard," "directly over the condition," or otherwise uniquely situated to detect the specific hazard. *Harrison v. Kroger Co.*, 737 F. Supp. 2d 554, 559 (W.D. Va. 2010) (collecting cases). Plaintiff contends there were three employees who were "working at the site of the hazard" at 7:41:25 a.m., 7:44:53 a.m. and 7:48:30 a.m., and their proximity to the hazard, together with Wal-Mart's policy requiring employees to consistently monitor for hazards, is sufficient to find that Wal-Mart should have known about the liquid leaking onto the ground. (Dkt. No. 23-1 at 18.)

Once more, the video evidence does not resolve the genuine dispute between the parties regarding how close the employees were to the liquid, and whether the pooling liquid was sufficiently noticeable that those employees should have seen it. A reasonable factfinder may conclude that one or more of those three employees was in sufficient proximity to the location of the liquid on the floor to establish constructive notice. *See e.g.*, *Gauldin v. Virginia Winn-Dixie, Inc.*, 370 F.2d 167, 170 (4th Cir. 1966) (finding no constructive notice where employee was eight to ten feet from the hazard); *Myers v. The Kroger Co.*, No. 7:08-cv-402, 2009 WL 251953, *2 (W.D.Va. Feb. 2, 2009) (finding constructive notice where employee was "near that area ten minutes" before the plaintiff's fall); *Garlick v. Safeway, Inc.*, 2009 WL 3447286, at *2 (Va. Oct. 23, 2009) (same);

At bottom, because the issue of whether Wal-Mart had or should have had notice is a fact-intensive inquiry that may reduce to how long the liquid was present on the floor, how noticeable

the liquid was, and how close certain employees were to the liquid before Plaintiff's fall, the current state of the record does not permit the entry of summary judgment. Viewing these facts in the light most favorable to Plaintiff, as the Court must at this juncture, a reasonable factfinder reviewing the footage could determine that the liquid pooling on the ground should have been discovered by Defendant. *See Brown*, 139 F.4th at 367 ("The record before us is scant, the video grainy, and the testimony conflicting. A reasonable jury could find for either party if given the chance. So it must be given the chance.").

## V.    CONCLUSION

In sum, the Court finds that this case presents "hard questions . . . fact-intensive, detail-sensitive, circumstance-specific questions," that go towards whether Wal-Mart had constructive notice of the liquid on the ground causing Plaintiff's fall. *Brown*, 139 F.4th at 359 (reversing the district court's grant of summary judgment for Wal-Mart because the "fact-intensive, detail-sensitive, circumstance-specific questions" regarding whether Wal-Mart had sufficient notice of the ice that cause Plaintiff's fall were "jury questions"). Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. No. 17) is **DENIED**.

**ENTERED** this 27th day of May, 2026.

Alexandria, Virginia.

_____ /s/ _____
Lindsey Robinson Vaala
United States Magistrate Judge

13